# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **PAUL CORTEZ MARTINEZ and ESTELLA C. MARTINEZ,** <br><br> **Plaintiffs,** <br><br> v. <br><br> **FORD MOTOR COMPANY, a Delaware Corporation; and DOES 1 through 10, inclusive,** <br><br> **Defendant.** | 1:18-cv-01607-LJO-JLT <br><br> **ORDER DENYING PLAINTIFFS' MOTION TO REMAND** <br><br> **(Doc. 11)** |

## I. <u>PRELIMINARY STATEMENT TO PARTIES AND COUNSEL</u>

Judges in the Eastern District of California carry the heaviest caseloads in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters. Given the shortage of district judges and staff, this Court addresses only the arguments, evidence, and matters necessary to reach the decision in this order. The parties and counsel are encouraged to contact the offices of United States Senators Feinstein and Harris to address this Court's inability to accommodate the parties and this action. The parties are required to reconsider consent to conduct all further proceedings before a Magistrate Judge, whose schedules are far more realistic and accommodating to parties than that of U.S. Chief District Judge Lawrence J. O'Neill, who must prioritize criminal and older civil cases.

Civil trials set before Chief Judge O'Neill trail until he becomes available and are subject to suspension mid-trial to accommodate criminal matters. Civil trials are no longer reset to a later date if Chief Judge O'Neill is unavailable on the original date set for trial. Moreover, this Court's Fresno

1

Division randomly and without advance notice reassigns civil actions to U.S. District Judges throughout the Nation to serve as visiting judges. In the absence of Magistrate Judge consent, this action is subject to reassignment to a U.S. District Judge from inside or outside the Eastern District of California.

## II. **INTRODUCTION**

Plaintiffs filed a complaint on October 18, 2018, in Kern County Superior Court alleging Defendant violated California's Song-Beverly Act. Defendant removed the complaint to federal court on November 20, 2018. Plaintiffs filed a Motion to Remand on February 27, 2019. The parties submitted briefs pertaining to the motion, and the matter was deemed suitable for decision on the papers pursuant to Local Rule 230(g). (Doc. 15.) For the reasons set forth below, Plaintiffs' Motion to Remand is DENIED.

## III. **FACTUAL BACKGROUND**

On July 30, 2012, Plaintiffs purchased a used 2010 Ford Escape, and allege express warranties accompanied the sale of the vehicle by which Defendant "undertook to preserve or maintain the utility or performance of Plaintiffs' vehicle or to provide compensation if there was a failure in such utility or performance." (Cmplt., ¶ 8.)

Plaintiffs allege the vehicle was delivered to them with serious defects and nonconformities including, but not limited to, engine and transmission defects. (Cmplt., ¶ 17.) Plaintiffs delivered the vehicle to one of Defendant's authorized repair facilities, but Defendant was unable to "conform Plaintiffs' vehicle" after a reasonable number of repair attempts. (Cmplt., ¶ 23.) Defendant allegedly failed to either promptly replace the used motor vehicle or make restitution in accordance with the Song-Beverly Act. Plaintiffs claim they are entitled to reimbursement of the price paid for the vehicle less the amount directly attributable to use by the Plaintiffs prior to discovery of the nonconformities. (Cmpt., ¶ 26.)

Plaintiffs allege three state-law claims under the California Song-Beverly Act for breach of implied warranty, breach of express warranty, and violation of the Song-Beverly Act, California Civil

2

Code § 1793.2. For these violations, Plaintiffs pray for special and actual damages, rescission of the purchase contract and restitution of all monies expended, for diminution in value, for incidental and consequential damages, and for a "civil penalty in the amount of two times Plaintiffs' actual damages." (Cmplt., p. 7, prayer for relief.)

## IV. ANALYSIS

### A. Legal Standard

Plaintiffs' claims all arise under California state law, and Defendant has removed the case to federal court under 28 U.S.C. § 1441,[1] predicated on diversity jurisdiction under 28 U.S.C. § 1332. Pursuant to Section 1332(a), federal courts have original jurisdiction over state law actions when the amount in controversy exceeds $75,000 and the action is between parties of diverse citizenship. *Id.* Diversity of citizenship must be complete, and the presence "of a single plaintiff from the same State as a single defendant deprives the district court of original diversity jurisdiction over the entire action." *Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 679 (9th Cir. 2006) (citations omitted).

When an amount in controversy is not stated in the complaint, the defendant bears the burden to establish the amount in controversy at removal. *Rodriguez v. AT & T Mobility Servs*. LLC, 728 F.3d 975, 981 (9th Cir. 2013). The removing party must initially file a notice of removal that includes "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014). The defendant's amount-in-controversy allegation "should be accepted when not contested by the plaintiff or questioned by the court." *Id*. at 553. If, however, the "defendant's assertion of the amount in controversy is challenged . . . both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id*. at 554. This proof can include affidavits, declarations,

---

[1] Section 1441(a) provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending. 28 U.S.C. § 1441(a).

or other "summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)). Additionally, the defendant may rely on "reasonable assumptions underlying the defendant's theory of damages exposure." *Ibarra*, 775 F.3d at 1198. The party seeking to invoke the jurisdiction of the court bears the burden of supporting its jurisdictional allegations with competent proof. *See Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

**B.** **<u>Preponderance of Evidence Establishes the Amount in Controversy Exceeds $75,000</u>**

Plaintiffs' claims all pertain to alleged violations under the Song-Beverly Act. "The Song-Beverly Consumer Warranty Act (the Act) represents the [California] Legislature's response to the increasing exploitation of express warranties in product advertising." *Jensen v. BMW of N.Am., Inc.*, 35 Cal. App. 4th 112, 121 (1995). The Act provides a number of protections for buyers who purchase consumer goods such as motor vehicles covered by express warranties. *Id.*

Among other requirements, a manufacturer of consumer goods covered by an express warranty and sold in California must generally maintain service and repair facilities within the state. Cal. Civ. Code § 1793.2(a). If the goods do not conform to the applicable express warranties, they must generally be serviced or repaired within 30 days. *Id.* § 1793.2(b). In order to trigger the manufacturer's service and repair obligations, the buyer "shall deliver nonconforming goods to the manufacturer's service and repair facility within this state . . . . " *Id.* § 1793.2(c).

Unless specific disclaimer methods are followed, an implied warranty of merchantability accompanies every retail sale of consumer goods in the state. *Id.* § 1792. Under the Act, an implied warranty of merchantability requires that a vehicle be reasonably suited for ordinary use – the Act provides for a minimum level of quality. *Am. Suzuki Motor Corp. v. Super. Ct.*, 37 Cal. App. 4th 1291, 1296 (1995). The implied warranty of merchantability applies to used goods so long as the used goods are purchased "in a sale in which an express warranty is given." Cal. Civ. Code § 1795.5. The duration

4

of the implied warrant with respect to used consumer goods is to be coextensive in duration with the express warranty, but "in no event shall such implied warranties have a duration of less than 30 days nor more than three months following the sale of used consumer goods to a retail buyer." *Id.* § 1795.5(c).

A buyer of consumer goods who is damaged by the manufacturer's failure to comply with the Act may bring an action to recover damages. If the buyer provides the manufacturer's violation was willful, "the judgment may include, in addition to [damages], a civil penalty which shall not exceed two times the amount of actual damages." Cal. Civ. Code § 1794(c).

Plaintiffs state three claims under the Song-Beverly Act for (1) breach of an express warranty; breach of the implied warranty of merchantability; and violation of California Civil Code § 1793.2.

**1.    Actual Damages Under the Song-Beverly Act**

In an action brought pursuant to the Song-Beverly Act, a plaintiff may recover "an amount equal to the actual price paid or payable by the buyer," *reduced by* "that amount directly attributable to use by the buyer." Cal. Civ. Code § 1793.2(d)(2)(B)-(C).

In asserting the amount of damages at issue, Defendant contends Plaintiffs seek actual damages in an amount equal to the purchase price of their vehicle, "which is more than $26,000." (Doc. 12, 9:14 (quoting Complaint, ¶ 9).) Plaintiffs argue restitution damages for the actual price of the vehicle must be reduced by various deductions and offsets including an offset for use of the buyer before repair was sought – i.e., the actual damage calculation cannot simply be the purchase price of the vehicle for amount-in-controversy purposes. Without any calculation of those deductions from the purchase price, Plaintiffs argue Defendant's calculation of actual damages is unsupported and speculative.

In general, affirmative defenses, counterclaims, and potential offsets may not be invoked to demonstrate the amount-in-controversy is actually less than the jurisdictional minimum. *See e.g., St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938) (holding "fact that the complaint discloses the existence of a valid defense to the claim" cannot be grounds for showing failure to surmount amount-in-controversy threshold); *Savarese v. Erick Transfer & Storage, Inc.*, 513 F.2d 140, 142 (9th

Cir. 1975) (holding defendant's potential counterclaim against plaintiff for money owed could not be subtracted from amount of damages alleged in complaint in order to defeat diversity jurisdiction).[2]

The issue of whether the use offset articulated in Section 1793.2(d)(2)(C) should be included in the amount in controversy was considered in an unpublished memorandum decision by the Ninth Circuit in December 2018. *Schneider v. Ford Motor Co.*, 756 Fed. Appx. 699, 701 (9th Cir. 2018) (unpublished). The appellate court noted the district court's consideration of the use offset under the Song-Beverly Act to determine the jurisdictional amount in controversy was valid:

> Consideration of the Use Offset was appropriate. We have recognized that an estimate of the amount in controversy must be reduced if 'a specific rule of law or measure of damages limits the amount of damages recoverable.' *See, e.g., Morris v. Hotel Riviera, Inc*., 704 F.2d 1113, 1115 (9th Cir. 1983); *see also Naffe v. Frey*, 789 F.3d at 1030, 1041 (9th Cir. 2015). Thus, an estimate of the amount in controversy must be based on the applicable 'measure of damages,' not on what a plaintiff requests in a complaint. *See, e.g., Morris*, 704 F.2d at 1115. Here, the measure of restitution is defined as '[t]he difference between what the plaintiff paid and the value of what the plaintiff received.' *See, e.g., In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 131, 103 Cal.Rptr.3d 83 (2009). The Use Offset measures the value of the F-150s that the putative class members purchased.

*Schneider* is persuasive authority that a reasonable estimate of the use offset to calculate actual damages under the Act is appropriate. Defendant maintains that if the use offset should be considered to calculate the amount in controversy, a reasonable mileage offset in this case is 4,500 miles which only reduces the actual damages by $978.52.

The set-off amount is determined by multiplying the "actual price of the new motor vehicle paid or payable by the buyer . . . by a fraction having its denominator 120,000 and having as its numerator the number of miles traveled by the new motor vehicle prior to the time the buyer delivered the vehicle" for correction of the problem. Cal. Civ. Code § 1793.2(d)(2)(C). The complaint contains no allegations regarding when Plaintiffs' vehicle was delivered to Defendant for repair or the mileage on the vehicle at

---

[2] In general, the rationale for refusing to consider affirmative defenses to whittle down the amount in controversy is to avoid the doubt and ambiguity that "would surround the jurisdictional base of most diversity litigation . . . [as the issues] going to a federal court's power to decide would be hopelessly confused with the merits themselves." *Zacharia v. Harbor Island Spa, Inc.*, 684 F.2d 199, 202 (2d Cir. 1982).

that time; the number of miles of use is critical to determining the use offset. Defendant has made an assumption 4,500 miles were driven before the vehicle was brought in for repairs. Determining whether this is a reasonable estimate requires, at a minimum, some information about the duration of time the vehicle was driven before it was delivered to Defendant for repair. Absent any allegations in that regard, the maximum duration of the implied warranty of merchantability provides the outer limits of the length of time Plaintiffs could use of the vehicle before delivering it for repair and still be covered by the implied warranty.

California Civil Code § 1795.5(c), provides in relevant part as follows:

> The duration of the implied warranty of merchantability . . . with respect to used consumer goods sold in this state, where the sale is accompanied by an express warranty, shall be coextensive in duration with an express warranty which accompanies the consumer goods, provided the duration of the express warranty is reasonable, but in no event shall implied warranties have a duration of less than 30 days nor more than three months following the sale of used consumer goods to a retail buyer. Where no duration for an express warranty is stated with respect to such goods, or parts thereof, the duration of the implied warranties shall be the maximum period prescribed above.

Given the durational limit of the implied warranty, it is reasonable to presume Plaintiffs' vehicle was presented to Defendant within that 3-month time frame since Plaintiffs state claims of violation of the implied warranty of merchantability. Assuming the vehicle was brought in for repair at the three-month limit, 4,500 miles is a reasonable assumption for three months of driving. Based on this assumed amount of use, the offset is $978.52 (4,500/120,000) * 26,093.92)).

Plaintiffs argue not only did Defendant fail to meaningfully consider the use offset, but Defendant also failed to mention the "multitude of *other* offsets and deductions that Defendant *routinely* utilizes to limit the damages a plaintiff is entitled to recover." There is a difference, however, between the use offset provided by statute and any other offsets Defendant may later claim as defenses: Plaintiffs have specifically alleged they are "entitled to reimbursement of the price paid for the vehicle less that amount directly attributable to use by the Plaintiffs prior to discovery of the nonconformities." (Cmplt., ¶ 26.) Whatever offsets Defendant may *otherwise* seek, Plaintiffs have expressly acknowledged their

actual damages are limited by the use offset. For jurisdictional purposes, it is the amount Plaintiffs' claims put at issue that guides the amount-in-controversy calculation – the total *disputed* amount – not a prospective assessment of defendant's actual liability. *Lewis v. Verizon Communications, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). And, importantly, because the use offset places a statutory limit on the amount of damages recoverable under the Act, that limit must be considered for purposes of calculating the amount in controversy. *Morris*, 704 F.2d at 1115. A statutory limit on recoverable damages is distinct from an offset sought as an affirmative defense that may or may not be applicable to limit recoverable damages.

As Plaintiffs have alleged entitlement to reimbursement for the price paid minus the amount attributable to Plaintiffs' use prior to discovery of the nonconformities, and as Defendant has made a reasonable assumption about the possible duration and amount of the use offset, the actual damages Defendant calculates is reasonable and not speculative. The amount of actual damages Plaintiffs' complaint places into controversy is at least $25,115.40 (purchase price of the vehicle, minus a reasonable use offset).

**2.     Civil Penalties Under the Song-Beverly Act**

Plaintiffs also seek a civil penalty of two times the amount of actual damages. (Cmplt., ¶ 55.) "Courts as a matter of law, calculate the amount in controversy based upon the maximum amount of civil penalties available to plaintiff." *Saulic v. Symantec Corp.,* No. 07-cv-00610-AHS-PLAx, 2007 WL 5074883, at *4 (C.D. Cal. Dec. 26, 2007). The Act provides that a civil penalty of no more than twice the amount of actual damages is available pursuant to California Civil Code §§ 1794(c) and (e). Though these damages are not considered punitive damages *per se*, California courts have, on numerous occasions, analogized the two because both are intended to punish and deter defendants rather than compensate plaintiffs. *See, e.g., Suman v. Super. Ct.*, 39 Cal. App. 4th 1309, 1317-18 (1995).

Plaintiffs argue Defendant has made no showing the civil penalty is more likely than not to be awarded in this case and cite *Zawaideh v. BMW of N.Am., LLC*, No. 17-cv-2151 (KSC), 2018 WL

1805103 (S.D. Cal. Apr. 17, 2018) for the proposition that a defendant must justify its assumption that an award of civil penalties would be appropriate in calculating the amount in controversy.[3] In *Zawaideh*, the court determined that because the civil penalty under the Act is analogous to an award of punitive damages, calculating the amount in controversy with respect to those civil penalties should be performed in the same manner as punitive damages: introducing evidence of jury verdicts in cases involving analogous facts to establish the entitlement to and a reasonable amount of a civil penalty. *Id*. at 2.

From the amount-in-controversy perspective, however, punitive damages are different from the award of Song-Beverly-Act civil penalties in an important aspect. While there is some logical appeal to treating the two alike for purposes of calculating the amount in controversy, calculating civil penalties in the same manner as punitive damages results in placing more emphasis on an assessment of the amount defendant will be potentially liable *rather* than determining what has been put at issue by the plaintiff.

An award of punitive damages is bounded by constitutional due process limits, but there is no "bright-line ratio which a punitive damages award cannot exceed." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003). Constitutional due process under the Fourteenth Amendment requires that the measure of punishment to the defendant is "both reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered." *Id.* The upper limit of punitive damages must be assessed against (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases. *Id.* at 418 (citing *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 575 (1996)). When a plaintiff seeks punitive damages, determining what the upper limits of a punitive damage award could possibly be under those particular circumstances *requires* a comparison of

---

[3] Plaintiffs also argue Defendant's actual damage calculation is flawed and speculative, thus the civil penalty calculation, which is based on the actual damage amount, is similarly speculative. As discussed above, the actual damage amount has been properly calculated with a reasonable use offset, and thus is not a speculative or flawed base from which a civil penalty calculation can be drawn.

9

analogous fact scenarios and awards in other cases. With the Song-Beverly Act's civil penalty, the upper limit of the awardable civil penalties is a bright line: no more than two times the actual damages – there is no question what the upper range of an award could be, and it is not necessary to compare other cases to determine how much has been put at issue. Once the upper limit of the civil penalty is established, there is no question how much could potentially be awarded by a jury. Requiring a defendant to show what award of civil penalties are likely to be awarded when the maximum award of civil penalties is already a known ratio shifts the amount-in-controversy inquiry to an assessment of how much a defendant is likely to be held liable – not how much the plaintiff has put at issue. Where a plaintiff properly alleges entitlement to the Act's civil penalty, which includes allegations of the requisite willfulness by the defendant, up to two times the amount of actual damages is put at issue whether or not that amount is ultimately awarded. *Rippee v. Boston Market Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005); *see also Scherer v. Equitable Life assurance Society of the United States*, 347 F.3d 394, 399 (2d Cir. 2003) (recognizing that the ultimate or provable amount of damages is not what is considered when determining the amount in controversy; rather, it is the amount put in controversy by the plaintiff's complaint). Because the maximum amount of the civil penalty is set by a known and calculable bright line, requiring the defendant to establish the likely amount of the civil penalty that is likely to be awarded shifts the focus, impermissibly in this Court's view, to an assessment of defendant's liability rather than what the plaintiff has placed into controversy. *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018) (restating basic principle that amount in controversy is "not a prospective assessment of [a] defendant's liability" but what is at stake in the underlying litigation).

Moreover, unlike punitive damages where a plaintiff does not typically seek a specific amount or ratio of punitive damages, Plaintiffs allege here that Defendant's conduct in failing to comply with the Song-Beverly Act was willful, and Plaintiffs specifically pray for a civil penalty "in the amount of two times Plaintiffs' actual damages." (Cmplt., p. 7, ¶ 5 (prayer for relief).) Because that is the amount of the civil penalty Plaintiff seeks, that amount has been expressly placed into controversy by the complaint.

The reasonable amount of alleged actual damages is $25,115.40; two times that amount is $50,230.80 ($25,115.40 * 2).

**3.    Attorneys' Fees**

Plaintiffs also seek an award of attorneys' fees. An award of attorneys' fees may be considered in calculating the amount in controversy. *See Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998). Attorneys' fees are available to Plaintiffs here under California Civil Code Section 1794(d).

In support of its removal, Defendant submits five petitions for attorneys' fees filed in other similar cases by the same counsel who represent Plaintiffs here. (Doc. 12-1, Mortenson Decl., ¶¶ 3-7; Doc. 12-2 – Doc. 12-11.) In these fee motions, the Knight Law Group ("KLG") sought attorneys' fees in a range from approximately $20,000 to $100,000; none of these cases proceeded to trial. These fee petitions establish that KLG attorneys charge between $250 and $500 per hour, and the time expended on the cases ranged from 50 hours to 130 hours.

Plaintiffs argue these fee petitions are not sufficient evidence because they are not actual *awards* of attorneys' fees found reasonable under all the circumstances. Moreover, Plaintiffs note Defendant has not attempted to set forth how these cases are similar to Plaintiffs' claims – some of these exemplar cases allege fraud claims, concealment, intentional misrepresentation, negligent misrepresentation, and even a claim under the Magnuson-Moss Warranty Act – which is different from Plaintiffs' claims solely under the Song-Beverly Act.

Defendant has marshalled sufficient evidence to establish a reasonable amount of attorneys' fees placed at issue by Plaintiffs' complaint is at least $15,000. From the exemplar petitions, it is reasonable to assume an average of $300 per hour for attorney work[4] will be sought by Plaintiffs and that the work performed would be approximately 50 hours. Based on those assumptions, a reasonable amount of

---

[4] This is not a finding that $300 per hour will be necessarily considered reasonable for any attorneys' fee petition presented in this matter.

11

attorneys' fees at issue is $15,000.

The fee petitions in each of the exemplars presented by Defendant very carefully explained the relevant factual details involved in those cases and each set forth voluminous citations to other cases where courts have approved as reasonable Plaintiffs' counsel's hourly rates and the amount of work performed. While the claims asserted in each of the exemplar cases proffered by Defendant may not be limited only to Song-Beverly Act claims, the facts asserted in those cases are sufficiently similar to the facts in this case. Moreover, because these cases were settled before trial without extensive dispositive motion work, it is not clear how allegations of other claims would significantly change the amount of work performed on the case.

Assuming only 50 hours of work will be expended is a conservative estimate of time that will be spent on this case. In the Court's experience, the work *already* performed in this matter may be reasonably close to 50 hours. *See generally, Hall v. FCA US LLC*, No. 1:16-cv-0684—JLT, 2018 WL 2298431, at * 7 (finding reasonable over 100 hours of attorney work on removed case alleging Song-Beverly Act claims which settled shortly after scheduling conference). Finally, even without considering attorneys' fees, Defendant has established the amount in controversy exceeds $75,000.

### 4. <u>Conclusion</u>

As set forth above, Defendant has established by a preponderance of the evidence that the amount of actual damages placed into controversy is $25,115.40; the civil penalty at issue is $50,230.80; and a conservative and reasonable estimate of attorneys' fees is $15,000. Therefore, Defendant has established the amount in controversy is at least $90,346.20, which satisfies the jurisdictional threshold for diversity jurisdiction under Section 1332(a). Removal jurisdiction exists, and Plaintiffs' motion to remand is denied.

///

///

///

# V. CONCLUSION AND ORDER

For the reasons set forth above, the Court's exercise of diversity jurisdiction over this matter is appropriate. Accordingly, IT IS HEREBY ORDERED that Plaintiff's Motion to Remand is DENIED.

IT IS SO ORDERED.

Dated: **May 6, 2019**         **/s/ Lawrence J. O'Neill**
UNITED STATES CHIEF DISTRICT JUDGE